Alfonso de Cumpiano, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
La parte apelante, el Director Ejecutivo y el Administrador del Sistema de Retiro de la Autoridad de Energía Eléctrica (la Autoridad), nos plantea que erró el Tribunal Superior, Sala de San Juan, al determinar que el Director Ejecutivo de la Autoridad no tenía facultad, ni discreción, para adoptar una definición del término compensación, para fines del Sistema de Retiro de la Autoridad.
Considerados los planteamientos de las partes, a la luz del derecho aplicable, determinamos que no erró el tribunal apelado y que procede confirmar la sentencia dictada en este caso.
*904 I
El Director Ejecutivo de la Autoridad para el 1990, Sr. José A. del Valle, emitió un memorando dirigido al personal, con el propósito de establecer una norma de exclusión del cómputo para pensión por jubilación respecto a las dietas recibidas por empleados en el disfrute de licencia por accidentes del trabajo. En su parte pertinente, dicho memorando establecía:

"Como el importe de las dietas no constituye salario para los efectos antes indicados, tampoco pueden constituir salario regular o compensación a los fines del cómputo de la pensión dentro de los términos del Reglamento del Sistema de Retiro. Por lo tanto, queda establecido que el importe de las dietas que reciban los empleados del F.S.E. (Fondo del Seguro del Estado) no se considerará para el cómputo de una pensión por jubilación."

Antes de la adopción de la referida norma, las dietas recibidas del Fondo por la Sra. María Mercedes González, empleada de la Autoridad acogida al retiro en 1991, se consideraban compensación y se cotizaban como tal para fines de retiro. Dichas dietas no fueron consideradas por el Sistema de Retiro para el cómputo de su pensión, en virtud de la directriz del Director Ejecutivo.
Tanto la Asociación de Empleados Gerenciales de la Autoridad, como la señora González, instaron demanda impugnando la norma adoptada. Argumentaron y cuestionaron la falta de autoridad del Director Ejecutivo para promulgarla e imponerla. Plantearon que las dietas del Fondo son parte del salario y que de no ser así, no podía establecerse la norma retroactivamente, porque violentaría derechos adquiridos.
Las partes estipularon los hechos y el tribunal apelado circunscribió la controversia a la facultad o no del Director Ejecutivo para emitir por sí sólo la aludida directriz en cuanto al salario para fines de retiro, sin la intervención de la Junta de Síndicos del Sistema de Retiro de la Autoridad (la Junta de Síndicos). Como determinó que la ley no le otorgaba esa facultad, acertadamente no entró a considerar las otras controversias puesto que su dilucidación dependería de que la Junta de Síndicos tomara una decisión análoga a la impugnada para redefinir el término salario.
Previo el análisis de las facultades legales del Director Ejecutivo y de la Junta de Síndicos, el tribunal dictó la sentencia objeto de este recurso declarando inoficiosa la norma y ordenando al Sistema de Retiro no ponerla en ejecución, mientras la Junta de Síndicos no disponga otra cosa.
Los apelantes sostienen que el Director Ejecutivo está facultado para disponer como lo hizo, puesto que se trata de un acto propio de administración, cuya reglamentación está autorizada por ley. Además, que dicho funcionario es quien determina y notifica al Sistema de Retiro el salario de los empleados, que del salario hay que descontar las dietas por ley y por el convenio colectivo, y que el Reglamento del Sistema de Retiro de la Autoridad excluye del salario cualquier "paga especial". En su alegato en oposición, los apelados refutan dichos argumentos.
II
Procede expongamos en primer término, las bases legales y reglamentarias que enmarcan la controversia.
La Ley Núm. 83 de 2 de mayo de 1941, según enmendada, 22 L.P.R.A. sees. 191 y ss., establece el régimen bajo el cual operará la Autoridad de Energía Eléctrica de P.R. La política general de ésta se ejercerá y determinará por una Junta de Gobierno y el Director Ejecutivo será responsable por la ejecución de su política y por la supervisión general de las fases operacionales. Secciones 4 y 5, 22 L.P.R.A. sees. 194 y 195. De conformidad con los estatutos corporativos de la Autoridad, el Director Ejecutivo puede adoptar las normas o reglas necesarias para la administración y operación de la Autoridad.
El Sistema de Retiro de los Empleados de la Autoridad fue creado por la Junta de Gobierno, mediante el Reglamento aprobado el 1ro de julio de 1945. El aludido Reglamento provee que la Administración del Sistema de Retiro está a cargo de una Junta de Síndicos, que ésta establecerá reglas para la administración y funcionamiento del sistema y que el Reglamento puede ser enmendado por la Junta de Síndicos, siempre que la intención a esos efectos se comunique previamente a la *905 Autoridad, quien tiene poder de veto. Para los efectos del Reglamento, los actos discrecionales de la Autoridad se ejercerán por la Junta de Gobierno (Art. (3)).
Así, pues, es claro que fue a una Junta de Síndicos a quien la Junta de Gobierno delegó la administración del sistema de retiro, y el poder de reglamentación para ello, y no al Director Ejecutivo. 
Pasemos a examinar el alcance de la actuación del Director Ejecutivo, a los efectos de determinar si constituyó un mero acto de administración, como alegan los apelantes.
Sabido es que el salario recibido por un empleado, y su monto, son fundamentales para los fines de determinar su eventual pensión por retiro. En el ámbito gubernamental, ésta se ha reconocido como una obligación moral del Estado ante los años dedicados por el empleado al bien común, en ocasiones con sacrificios económicos. Por ello, las disposiciones estatutarias de propósitos remediales, como las que proveen pensión por retiro, se interpretan liberalmente. Sánchez v. Administración de los Sistemas de Retiro, etc., 116 D.P.R. 372 (1985).
Con esos principios en mente veamos las definiciones de los términos relevantes establecidos en el Reglamento del Sistema de la Autoridad (el Reglamento). Según este:
-"Compensación" comprende "el salario regular que recibe un empleado por servicios prestados a la Autoridad excluyendo paga por horas trabajadas en exceso de su itinerario regular de trabajo, bonificaciones y paga especial". (Art. 1(7)).
-"Empleado" significa... "quien reciba una compensación fija de la Autoridad que no sea una pensión, paga por separación voluntaria u honorarios bajo contrato..." (Art. 1(5)).
-"Servicio" significa aquel prestado a la Autoridad y pagado por ella, "disponiéndose que para efectos de retiro no se acreditará ningún tipo de licencia sin paga con excepción de la Licencia de Separación de Empleo y Sueldo Autorizada por Tiempo Definido para Fines Sindicales". (Art. 1(9) (a)).
Ni esas disposiciones, ni disposición alguna de la ley o el Reglamento aplicables a la Autoridad, excluye del salario las dietas recibidas del Fondo por un empleado accidentado en el empleo.
Debe quedar claro que esas dietas, a los fines de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. secs. 1 y ss., consisten en la compensación que recibe un obrero que ha sufrido un accidente del trabajo durante el período de recuperación, mientras está incapacitado para trabajar. Contrario a la incapacidad permanente, que le da derecho a compensación adicional, las dietas en el caso de los empleados públicos, se deducen del salario. Ríos Rivera v. Comisión Industrial, 108 D.P.R. 808 (1979); Rivera Rivera v. Comisión Industrial, 101 D.P.R. 712 (1973); Art. 3 de la Ley Núm. 45, supra, 11 L.P.R.A. sec. 3, (Supl. 1996). Esta última disposición establece, a esos efectos, lo siguiente:
Ningún empleado o funcionario público podrá recibir durante el período de incapacidad para el trabajo con excepción del período que disfrute de la licencia regular por vacaciones o por enfermedad, cantidad alguna por concepto de compensaciones semanales que, sumados al sueldo que reciba de la agencia del Gobierno para la que trabaje, exceda del sueldo regular de su plaza.
La compensación a manera de dietas se pagará por el período que establece la ley, hasta la fecha en que el paciente es dado de alta. El alta puede ser por motivo de su recuperación y regreso al trabajo o por incapacidad permanente, que le hace acreedor a la compensación adicional. Art. 3, supra. Ambos pagos, los de dietas y la compensación adicional, no deberán coexistir. Aunque limitadamente, las dietas pretenden suplir el salario que devengaba el empleado, mientras que la compensación adicional por incapacidad permanente suple el porciento de incapacidad limitativa de la productividad. Ríos Rivera v. Comisión Industrial, supra, págs. 815 y 816.
De lo anterior se colige que las dietas a los empleados públicos, como a los que se refiere este caso, *906 no se pagan además del salario, sino que suplen parte de éste y se recibirán mientras el Fondo no de de alta al empleado.
Vigente la situación legal y reglamentaria antes indicada, el Director Ejecutivo adoptó la norma sobre exclusión de las dietas del salario cotizable para retiro. Los apelantes alegan que se trata de un mero acto de administración, por cuanto esa norma ya existía en el sistema de retiro. No tienen razón.
En primer lugar, la práctica hasta entonces vigente, según surge del expediente, era la de tomar en cuenta para efectos de retiro el monto del salario, incluyendo las dietas deducidas de éste. Las normas del Reglamento no disponen lo contrario y la práctica era armonizable con dichas normas. En segundo lugar, se trata del establecimiento de una política de disminución de salario y posiblemente de aportaciones, para los efectos del retiro, que presupone por su alcance una enmienda al Reglamento. Tengamos en cuenta que la norma es una interpretación del Director Ejecutivo que no está expresamente dispuesta en el Reglamento.
Como hemos visto de las disposiciones reglamentarias y legales previamente citadas, las dietas no son paga adicional, sino que sustituyen la parte correspondiente del salario regular; no son paga especial, porque representan la parte del salario a lo que el empleado tiene derecho. Además, no está excluido el período en recuperación del servicio prestado a la Autoridad por la persona y durante ese período, ésta es empleada de la agencia.
A manera de analogía, y en aras de dejar establecido que se trata de una interpretación que ciertamente sienta política, téngase presente que el Reglamento General para la Concesión de Pensiones, Beneficios y Derechos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura de 1990, incluye en su definición de servicio activo, entre otros, "los servicios prestados por todo participante... mientras esté recibiendo tratamiento médico en el Fondo del Seguro del Estado". (Regla 4).
Además, el precitado Reglamento General, dispone en su Regla 9.2 que las aportaciones de los participantes se calcularán y pagarán:

"sobre el sueldo completo que debiera recibir o que le correspondería recibir al participante aun cuando éste, bien fuere por disposición reglamentaria de su patrono o por convenio colectivo, reciba menos del salario completo por alguna de las siguientes razones:

(a) por estar recibiendo dietas del Fondo del Seguro del Estado."
En otras palabras, para efectos del sistema de retiro del Gobierno, el tiempo en recuperación y el salario devengado durante éste, incluyendo las dietas, no queda afectado para los efectos de retiro por estar el empleado incapacitado temporeramente. Con la norma adoptada por el Director Ejecutivo, sin la intervención de la Junta de Síndicos, los empleados de la Autoridad no estarían en igual posición.
La situación legal para los empleados públicos bajo el sistema de retiro gubernamental está a tono con el principio jurisprudencial que preceptúa que el hecho de que un trabajador esté descansando en su hogar como parte del tratamiento ordenado por el Fondo no puede afectar sus derechos. Muñiz Hernández v. Policía de P.R., _ D.P.R. _ (1993), 93 J.T.S. 137, pág. 11195.
Por tanto, puede captarse que la interpretación del Director Ejecutivo es un acto que tiene impacto en el sistema de retiro de la Autoridad y en el monto de la pensión que eventualmente recibirá el empleado. La práctica previa de la Autoridad era cónsona con el tratamiento a otros empleados públicos y con la flexibilidad con la que deben interpretarse los estatutos remediales. Como bien determinó el tribunal apelado, correspondía a la Junta de Síndicos con el aval de la Junta de Gobierno, adoptar una norma de tal naturaleza, mediante las enmiendas reglamentarias correspondientes y tomando en cuenta su impacto en el sistema y en los empleados de la Autoridad.
ni
Por tanto, no erró el tribunal apelado al decretar inoficiosa la norma cuestionada adoptada por el *907 Director Ejecutivo ante la falta de autoridad para ello, por lo cual se confirma su sentencia.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 97 DTA 27
1. El Director Ejecutivo es uno de los ocho miembros de la Junta de Síndicos y ésta nombra un Administrador para el sistema de retiro.